UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALBERT BROWN,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of<br>Social Security,<br><br>　　　　　　Defendant. | No. 2:15-cv-0293-KJN<br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying plaintiff's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI, respectively, of the Social Security Act ("Act").[1]  In his motion for summary judgment, plaintiff principally contends that the Commissioner erred by finding that plaintiff was not disabled from December 31, 2001, through the date of the final administrative decision.  (ECF No. 17.)  The Commissioner filed an opposition to plaintiff's motion and a cross-motion for summary judgment.  (ECF No. 18.)  No optional reply brief was filed.

---

[1] This action was referred to the undersigned pursuant to E.D. Cal. L.R. 302(c)(15), and both parties voluntarily consented to proceed before a United States Magistrate Judge for all purposes.  (ECF Nos. 7, 9.)

1

For the reasons discussed below, the court DENIES plaintiff's motion for summary judgment, GRANTS the Commissioner's cross-motion for summary judgment, and enters judgment for the Commissioner.

I.  BACKGROUND

Plaintiff was born on August 10, 1956; has a high school education; and is able to communicate in English.  (Administrative Transcript ("AT") 247, 366.)[2]  He has worked as a boat sweeper, door painter, and rental equipment loader.  (AT 249.)  On June 26, 2009, plaintiff applied for DIB and SSI, alleging that his disability began on December 31, 2001, at the age of 36.  (AT 23, 248, 366.)  Plaintiff alleged that he was disabled primarily due to back pain, shoulder pain, chronic obstructive pulmonary disease ("COPD"), diabetes, depression, and anxiety.  (AT 15-16, 367.)  After plaintiff's applications were denied initially and on reconsideration, plaintiff requested a hearing before an administrative law judge ("ALJ"), which took place on December 2, 2010, and at which plaintiff, represented by an attorney, testified.  (AT 76-104.)

The ALJ issued a decision dated March 16, 2011, determining that plaintiff had not been under a disability, as defined in the Act, between December 31, 2001 and the date of that decision, but that decision was subsequently vacated and remanded by the Appeals Council in a decision dated September 27, 2011.  (AT 105-128.)  On remand, the ALJ held another hearing which took place on May 9, 2013, and at which plaintiff, represented by an attorney, and a vocational expert ("VE") testified.  (AT 47-75.)  In a decision dated July 15, 2013, the ALJ again determined that plaintiff had not been under a disability, as defined in the Act, from December 31, 2001, through the date of that decision.  (AT 9-29.)  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on December 5, 2014.  (AT 1-6.)  Plaintiff then filed this action in federal district court on February 4, 2015, to obtain judicial review of the Commissioner's final decision.  (ECF No. 1.)

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order.  The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

## II. ISSUES PRESENTED

In this action, plaintiff raises the following issues: (1) whether the ALJ improperly rejected the opinion of plaintiff's treating physician Dr. George Scarmon; and (2) whether the ALJ erroneously discounted plaintiff's own testimony concerning his symptoms and functional limitations.

## III. LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

## IV. DISCUSSION

### A. Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to DIB and SSI pursuant to the Commissioner's standard five-step analytical framework.[3] As an initial matter, the ALJ found that plaintiff

---

[3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

remained insured for purposes of DIB through December 31, 2003. (AT 15.) At the first step, the ALJ concluded that plaintiff had not engaged in substantial gainful activity since December 31, 2001. (Id.) At step two, the ALJ found that plaintiff had the following severe impairments: shoulder pain, low back pain, and bilateral knee pain. (Id.) However, at step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AT 16-17.)

Before proceeding to step four, the ALJ assessed plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except that the claimant is unable to climb ladders, ropes or scaffolds.

(AT 17.)

At step four, the ALJ found, based on the VE's testimony, that plaintiff was capable of performing past relevant work as an "equipment rental job, door assembler and sweeper" because such work did not require the performance of work-related activities precluded by plaintiff's

---

Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.

Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.

Step four: Is the claimant capable of performing his past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

4

1  RFC.  (AT 23.)  Despite finding plaintiff not disabled at step four, the ALJ continued to step five
2  and determined that, in light of plaintiff's age (a younger individual), education (at least high
3  school with ability to communicate in English), work experience, and residual functional
4  capacity, there were jobs that existed in significant numbers in the national economy that plaintiff
5  could perform.  (Id.)  Thus, the ALJ concluded that plaintiff had not been under a disability, as
6  defined in the Act, from December 31, 2001, through the date of the ALJ's decision.  (AT 24.)

   B.   Plaintiff's Substantive Challenges to the Commissioner's Determinations

   1. *Whether the ALJ improperly rejected the opinion of plaintiff's treating physician Dr. Scarmon*

10  First, plaintiff contends that the ALJ improperly assigned "little weight" to the treating
11  opinion of Dr. Scarmon.
12  The weight given to medical opinions depends in part on whether they are proffered by
13  treating, examining, or non-examining professionals.  Holohan v. Massanari, 246 F.3d 1195,
14  1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  Generally speaking,
15  a treating physician's opinion carries more weight than an examining physician's opinion, and an
16  examining physician's opinion carries more weight than a non-examining physician's opinion.
17  Holohan, 246 F.3d at 1202.
18  To evaluate whether an ALJ properly rejected a medical opinion, in addition to
19  considering its source, the court considers whether (1) contradictory opinions are in the record;
20  and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a
21  treating or examining medical professional only for "clear and convincing" reasons.  Lester, 81
22  F.3d at 830-31.  In contrast, a contradicted opinion of a treating or examining professional may be
23  rejected for "specific and legitimate" reasons.  Id. at 830. While a treating professional's opinion
24  generally is accorded superior weight, if it is contradicted by a supported examining
25  professional's opinion (supported by different independent clinical findings), the ALJ may
26  resolve the conflict.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes
27  ////
28  ////

v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund, 253 F.3d at 1157,[4] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, by itself, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

On July 8, 2010, Dr. Scarmon issued a physical assessment essentially indicating that plaintiff had no residual functional capacity. (AT 443.) Based on a diagnosis of chronic degenerative arthritis, Dr. Scarmon opined that plaintiff could only lift or carry no more than 15 pounds and had limited range of motion in his arms and legs. (AT 443.) He further opined that plaintiff could stand or walk no more than three hours in an eight hour day, and could only walk a distance of one block without interruption. (Id.) Dr. Scarmon found that plaintiff's ability to perform sedentary work was also severely limited as he was only able to sit without interruption for one hour or less. (Id.) Dr. Scarmon found that plaintiff's postural activities were limited to occasional bending, balancing, stooping, or crouching, and that he could never climb, kneel, or crawl. (Id.) Dr. Scarmon found that plaintiff's manipulative activities were limited to reaching and handling occasionally, and that he could never push or pull. (Id.) Dr. Scarmon also found that plaintiff needed extra rest every half hour. (Id.) The ALJ provided the following reasons for assigning "little weight" to Dr. Scarmon's opinion:

> This assessment is given little weight. First, it is inconsistent with the doctor's own treatment recommendations insomuch as reports show only intermittent office visits for medication management. Clearly, one would expect more frequent and aggressive treatment if the claimant were as limited as alleged. Furthermore, this assessment contrasts with the claimant's own accounts of daily activities, which show him capable of light household chores, work activity and goat herding, amongst other activities. Lastly, Dr. Scarmon did not support his assessment with ample objective findings, instead indicating broad diagnoses in explanation of his limitations.

---

[4] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; (6) specialization. 20 C.F.R. § 404.1527.

6

> Ultimately, the undersigned finds the other three medical opinions are more consistent with the record as a whole.

(AT 22.)  As discussed below, the ALJ properly discounted Dr. Scarmon's opinion.

As the ALJ noted in his decision, Dr. Scarmon's opinion was contradicted by the opinions of plaintiff's examining physicians and non-examining physicians.  Examining physician Dr. Siciarz opined that plaintiff had no physical limitations.  (AT 21, 358.)  Furthermore, a second examining physician, Dr. Khan, found that plaintiff could lift 100 pounds occasionally, 50 pounds frequently, had no postural limitations, and only minor manipulative limitations.  (AT 455.)  Dr. Hoenig, a third examining physician, found that plaintiff could lift 50 pounds occasionally, 25 pounds frequently, had minor postural limitations, and had no manipulative limitations.  (AT 487.)  Those opinions were supported by independent clinical findings, including the grip, range of motion and straight-leg raising tests conducted by the examining physicians, which all generally showed normal results.  (AT 356-57, 454-55, 485-86.)  In addition, the non-examining physicians who reviewed plaintiff's medical records found that plaintiff did not have any severe physical impairments.  (AT 21-22, 356-57, 366, 397-98, 413-14, 457-58.)  Because Dr. Scarmon's opinion was contradicted by the other medical opinions in the record, which were supported by independent clinical findings and by the medical record as a whole, the ALJ legitimately relied on the examining and non-examining opinion evidence as a specific and legitimate reason for discounting Dr. Scarmon's opinion.  Andrews, 53 F.3d at 1041 (an examining physician's opinion can constitute substantial evidence when it "is based on independent clinical findings"); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record.").

Plaintiff contends that none of the examining physicians had access to plaintiff's complete medical records.  However, plaintiff does not provide any citations to the record to support that argument and, in any event, a review of the record shows that plaintiff's assertion is incorrect.  Indeed, in the report filed by Dr. Siciarz, it clearly states "[m]edical records submitted were

reviewed." (AT 355.) Similarly, Dr. Hoenig's report states that he was provided with lab reports, multiple progress notes and X-rays of both shoulders, both knees, and the back. (AT 484). Lab reports (AT 342-50, 351-53, 394-96), progress notes (AT 381-93, 436-42, 470-75), and X-rays (AT 435, 468-69) constitute virtually the entire medical record aside from the opinions themselves and case development worksheets. Therefore, it appears that Dr. Hoenig was provided with all of plaintiff's medical records that had been developed prior to the time of his examination.

Dr. Khan's report states that no review of medical records was performed. (AT 452.) However, his opinion was based primarily on his independent clinical findings and the tests he performed on plaintiff. (AT 452-56.) Furthermore, Dr. Khan's observations were similar to those of Dr. Siciarz and Dr. Hoenig. (AT 21, 358, 455, 487.) For example, the range of motion tests performed by Dr. Khan and Dr. Hoenig had identical results for the hip, knee, and shoulder joints, and only ten degree variances in the range of motion in the lumbar spine. (AT 454, 485-86.) To be sure, the regulations require that a consultative examiner be given any necessary background information about plaintiff's condition. 20 C.F.R. § 404.1517. Background information is essential because consultative exams are often utilized "to try to resolve an inconsistency in the evidence." 20 C.F.R. § 404.1519a(b). However, Dr. Khan's report is supported by his own clinical findings and broadly consistent with both Drs. Siciarz' and Hoenig's reports. (AT 17, 22.) It is also largely consistent with Dr. Scarmon's treatment notes up to that point. (AT 381-93, 436-42.) Because Dr. Khan's opinion was supported by his own examination, the opinions of Drs. Siciarz and Hoenig, and the medical record as a whole, the ALJ properly relied on it. However, even if such reliance were improper, the ALJ's further reliance on the opinions of Drs. Siciarz and Hoenig was a specific and legitimate reason for discounting Dr. Scarmon's opinion. Andrews, 53 F.3d at 1041.

In addition, the ALJ correctly found an inconsistency between Dr. Scarmon's opinion and his conservative treatment recommendations, which were largely limited to prescribing pain medications. (AT 20, 22.) Aside from a single referral to a chiropractor in 2011 (AT 59) and a single steroid shot in 2012 (AT 60, 473), the record indicates that Dr. Scarmon's treatment

1  recommendations for plaintiff's back and shoulder pain were limited to prescribing pain
2  medications and performing diagnostic tests. (AT 20, 381-93, 436-42, 470-75.) Plaintiff
3  speculates that Dr. Scarmon's conservative treatment recommendations were due to his
4  awareness of plaintiff's inability to pay for more aggressive treatment. (AT 54-55, 91-92.) While
5  plaintiff is correct that a claimant's inability to pay for, or otherwise obtain, a particular course of
6  treatment cannot serve as a basis for using the absence of that treatment against the claimant, Orn,
7  495 F.3d at 638, that rule does not apply where that treatment is never prescribed or
8  recommended by the claimant's physicians. Furthermore, there is no evidence in the record
9  showing that any of plaintiff's physicians refrained from recommending such treatment on the
10 basis of plaintiff's inability to pay.

11       With two minor exceptions (AT 59-60, 473), the record gives no indication that Dr.
12 Scarmon ever prescribed or counselled plaintiff to seek treatment options for his allegedly
13 debilitating back pain that were more aggressive than pain medication. (AT 381-93, 436-42, 470-
14 75.) Furthermore, the record indicates that Dr. Scarmon believed plaintiff had insurance through
15 Placer County at least as of August 21, 2009. (AT 392.) The record shows that Dr. Scarmon was
16 aware of plaintiff's lack of health insurance by 2013 (AT 247, 475), but the pattern of
17 conservative treatment recommendations continued even after this apparent revelation. (AT 20.)
18 There is no indication that Dr. Scarmon learned of plaintiff's inability to pay and then modified
19 his treatment recommendations as a result.

20       Finally, Dr. Scarmon's frequent focus on plaintiff's diabetes and smoking habits, rather
21 than his allegedly debilitating back and shoulder impairments, also suggests that plaintiff's back
22 and shoulder pain were effectively managed by his conservative treatment. (AT 386, 388, 390,
23 392, 473, 475.)

24       Plaintiff's contention that Dr. Scarmon's treatment recommendations were influenced by
25 plaintiff's lack of insurance or other ability to pay is not supported by the record and amounts to
26 little more than conjecture. Therefore, the ALJ was entitled to conclude that Dr. Scarmon's
27 conservative treatment recommendations were a reflection of plaintiff's actual health, and to rely
28 on the inconsistency between Dr. Scarmon's opinion that plaintiff had extreme limitations and Dr.

9

Scarmon's mild treatment recommendations in discounting Dr. Scarmon's opinion.

In sum, the ALJ provided several specific and legitimate reasons to accord "little weight" to Dr. Scarmon's opinion. Lester, 81 F.3d at 830. While plaintiff urges a different interpretation of the evidence, the court defers, as it must, to the ALJ's rational resolution of any conflicting evidence and ambiguities in the record. Therefore, the ALJ did not err in discounting Dr. Scarmon's opinion.[5]

2. *Whether the ALJ erroneously discounted plaintiff's own testimony concerning his symptoms and functional limitations*

Plaintiff also contends that the ALJ improperly discounted plaintiff's own testimony regarding his symptoms and functional limitations.

In Lingenfelter v. Astrue, 504 F.3d 1028 (9th Cir. 2007), the Ninth Circuit Court of Appeals summarized the ALJ's task with respect to assessing a claimant's credibility:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. . . .

Lingenfelter, 504 F.3d at 1035-36 (citations and quotation marks omitted). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking...." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

/////

---

[5] The ALJ also provided other reasons for discounting Dr. Scarmon's opinion, including plaintiff's daily activities and the lack of ample objective findings supporting Dr. Scarmon's opinion. Nevertheless, because the court finds that the reasons discussed above are plainly sufficient to uphold the ALJ's decision, the court need not consider the ALJ's additional reasons.

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, the "'[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between his testimony and his conduct, [claimant's] daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains.'" Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Id. at 959.

Here, in support of his adverse credibility determination, the ALJ relied on plaintiff's conservative medical treatment, plaintiff's sporadic work history, inconsistencies in the record regarding plaintiff's substance abuse, plaintiff's daily activities, and plaintiff's general lack of specificity in describing his symptoms. (AT 20-21.)

First, plaintiff's relatively conservative treatment was a proper consideration. See Tommasetti, 533 F.3d at 1039-40 (reasoning that a favorable response to conservative treatment undermines complaints of disabling symptoms); Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) ("We have previously indicated that evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment."); Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989). Aside from a single referral to a chiropractor in 2011 (AT 59) and a single steroid shot in 2012 (AT 60, 473), the record indicates that Dr. Scarmon's treatment recommendations for plaintiff's back and shoulder pain were limited to prescribing pain medications and diagnostic testing. (AT 20, 381-93, 436-42, 470-75.) The lack of evidence showing that Dr. Scarmon, as the treating physician, recommended more aggressive treatment does not comport with plaintiff's allegations that his debilitating pain was "constantly" present. (AT 21, 63.)

////

Furthermore, the ALJ properly considered plaintiff's work history in support of his adverse credibility determination. (AT 20-21.) The record regarding plaintiff's work history indicates that he only worked sporadically, and at one point had ceased employment for three years without any disability. (AT 231-32.) Additionally, plaintiff was able to do some work after his alleged onset date and left this employment because of a business-related layoff, not because of any disabling impairment. (AT 453.) Accordingly, it was reasonable for the ALJ to infer that plaintiff ceased working for reasons other than disabling pain and was not experiencing disabling pain for at least some portion of the period under review.[6]

The ALJ also appropriately referenced the inconsistencies in the record regarding plaintiff's alcohol use. See Thomas, 278 F.3d at 959 (ALJ properly considered claimant's lack of candor regarding drug and alcohol use as a reason in support of the ALJ's determination that plaintiff's testimony regarding the extent of his limitations was not credible). For example, at his initial hearing in December 2010, the claimant claimed that he had been clean and sober since May 2009. (AT 21, 85.) However, three months later, Dr. Scarmon's notes describe him as a "disheveled, alcoholic-appearing male." (AT 392.) While the note also states that plaintiff had been dry for 90 days, and in Alcoholics Anonymous (id.), the ALJ could reasonably conclude that Dr. Scarmon was merely recording a claim by the plaintiff and was permitted to rely on Dr. Scarmon's actual observations of the patient on that day to conclude that plaintiff had not been fully forthcoming regarding his history of alcohol use. Tommasetti, 533 F.3d at 1038; Orn, 495 F.3d at 630.

In light of the above, the court finds that the ALJ provided specific, clear, and convincing reasons for discounting plaintiff's testimony of disabling symptoms and functional limitations

////

////

---

[6] While it appears that plaintiff conceded during the administrative hearing that there is insufficient evidence to show that he was disabled prior to October 2009 (see AT 78-80), that concession does not diminish the impact of the inconsistency between plaintiff's work history and plaintiff's initial claim of a disability beginning in December of 2001 for purposes of assessing plaintiff's credibility.

beyond the limitations assessed in the ALJ's RFC that were supported by substantial evidence in the record as a whole.[7]

V.    CONCLUSION

For the foregoing reasons, the court concludes that the ALJ's decision is free from prejudicial error and supported by substantial evidence in the record as a whole.  Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 17) is DENIED.

2. The Commissioner's cross-motion for summary judgment (ECF No. 18) is GRANTED.

3. The Commissioner's final decision is AFFIRMED and judgment is entered for the Commissioner.

4. The Clerk of Court shall close this case.

IT IS SO ORDERED.

Dated:  January 29, 2016

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

---

[7] Because the reasons discussed above are sufficient to support the ALJ's adverse credibility determination, the court declines to consider the ALJ's remaining reasons for discounting plaintiff's credibility.